IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| D. James Phillippi, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 2:07-cv-916 |
| Jim Phillippi, Inc., et al., | : | JUDGE HOLSCHUH |
| Defendants. | : | |
| | | |
| Jim Phillippi, Inc., et al., | : | |
| Plaintiffs, | : | |
| v. | : | Case No. 2:07-cv-1001 |
| D. James Phillippi, et al., | : | JUDGE HOLSCHUH |
| Defendants. | : | |

REPORT AND RECOMMENDATION

D. James Phillippi, the former operating officer of certain automobile dealerships which are parties to this case, and which are in the process of having their assets and liabilities liquidated, has moved for the appointment of a receiver to supervise that activity. His motion was referred to the Magistrate Judge to hold a hearing and issue a Report and Recommendation. The hearing was held on April 23, 2009. For the following reasons, the Court recommends that no receiver be appointed.

I.

The hearing in this case was not lengthy. Only three witnesses - Mr. Phillippi, John Smurda, and Adam Scurti - testified. The Court did admit a number of exhibits as well.

The testimony and exhibits support the following version of the facts which are relevant to the receivership question.

For many years, Mr. Phillippi ran both Jim Phillippi, Inc. and J&J Ford, Inc. Both are car dealerships. He was ousted from his position by action of the companies' directors several years ago. The short version of the claims asserted in these two cases are that Mr. Phillippi wants an accounting of what has happened to the dealerships since he has been gone (he is still a minority shareholder in both corporations), and the dealerships and the individual parties want him to repay money which they think he misappropriated from the businesses.

Sometime after the cases were filed, both businesses decided to close their doors. For a number of months, they have conducted no business other than negotiating with the manufacturers - either General Motors or Ford Motor Company - to reduce their indebtedness to these companies or their affiliates, and selling of whatever physical assets remain to raise money to pay debts. John Smurda, who took over operation of the businesses after Mr. Phillippi was ousted, has been supervising these activities. He has been providing periodic accountings of his activities to all the shareholders, including Mr. Phillippi. The affidavit which he filed on January 20, 2009 in connection with the memorandum in opposition to appoint a receiver detailed what had happened up to that date. Mr. Smurda testified that little of significance has happened in the last several months, and that he is still waiting on General Motors to repurchase parts from Jim Phillippi, Inc. He also testified that there is little else of value remaining at either dealership, but he is doing his best to sell whatever remains. It is unlikely that any significant amount of money will be left over after the corporate debts are paid.

Mr. Phillippi testified and identified a large number of

exhibits. The vast majority of his testimony was about transactions that have occurred in the last several years - and not necessarily in conjunction with winding down the dealerships - and about which he has questions. For example, he questioned a number of items that were reported on his K-1s for 2006 and 2007. He also questioned some specific financial transactions, such as the backing out of a rent payment in October, 2007 and a loan made to J&J in February of 2007. He raised some general questions about the way in which Mr. Smurda was selling off assets, but did not identify any improprieties in that process, nor did he present evidence that any of the money being raised from the sale of assets was not being accounted for correctly. He did raise an issue about the corporations' payment of legal fees to pursue the claims against him and to defend against the claims which he has asserted.

Mr. Scurti, an attorney and shareholder and director of the corporations, also testified. He answered several questions about the rent charge-back and the February, 2007 loan, and also noted that no money had been paid to the corporate shareholders in either 2007 or 2008. He was asked about the basis for the corporations' claims against Mr. Phillippi and provided some testimony about that, but the Court deemed it irrelevant to the receivership question and it will not be summarized here.

Finally, the exhibits which were offered into evidence consist primarily of financial documents, such as check registers, ledger sheets, and other similar documents, relating to the corporations' business activities. Many of them deal with business activities that are unrelated to the current winding up of the corporations' financial affairs.

II.

According to the opening statement made by Mr. Phillippi's counsel, appointing a receiver at this stage of the case is

necessary for several reasons. They include conducting an inventory of the remaining assets, ending any commingling of corporate funds, ending any improper financial transactions, preparing a report about past questionable transactions, and dealing with any potential conflicts of interest on the part of either Mr. Scurti or other attorneys. As articulated in the memorandum filed in support of the motion to appoint a receiver, the purpose of this particular receiver would be "to prevent injury and preserve property in which a party to the litigation has an interest" - in particular, the assets of Jim Phillippi, Inc. and J&J Ford. That memorandum also asserts that a receiver is appropriately appointed "when dominant shareholders diverted funds from a corporation and managed the corporation to the general detriment of the minority shareholder." Implicit in these arguments is the notion that, unless a receiver is appointed, Mr. Phillippi's shareholder's interest in the two corporations will be diminished due to the way in which the corporations, through Mr. Smurda, will complete the liquidation of the remaining corporate assets.

There is no question that the appointment of a receiver over either a going business concern, or one which is winding up its affairs, is a drastic remedy. It is generally reserved for situations where the business' "funds or properties are being mismanaged and are in imminent danger of being lost to the stockholders and creditors through the collusion and fraud of [the corporate] officers...." <u>Macon Lumber Co. v. Bishop & Collins</u>, 229 F.2d 305, 307 (6th Cir. 1956). The inadequacy of legal remedies is also a factor because the appointment of a receiver is an equitable remedy, and the Court may also consider whether "appointment [of a receiver] will do more harm than good." <u>De Boer Structures (U.S.A.) v. Shaffer Tent & Awning Co.</u>, 187 F.Supp. 2d 910, 925 (S.D. Ohio 2001). The question presented

here is whether Mr. Phillippi has met these requirements. The short answer is that he has not.

None of the testimony at the hearing, and none of the exhibits offered, came close to demonstrating that any waste or unwarranted loss of value of corporate assets will occur unless the Court appoints a receiver. Mr. Smurda appears to be acting reasonably in disposing of the few assets that remain unsold. There is no evidence that he or any one else who currently exerts influence over the affairs of either corporation is concealing assets, hiding proceeds, commingling funds, or failing to account for the financial activities which are associated with winding down the corporations' affairs. Further, there is no evidence that a receiver would do a better job than Mr. Smurda in disposing of, and accounting for, the few remaining assets. Finally, there is no evidence that Mr. Phillippi would not have an adequate remedy at law to redress any claims he may have about the way in which the winding down is occurring. He has all of the information about what has happened, and if he wishes to challenge any activity as improper or unwise, he may do so and seek damages from those who allegedly chose to conduct the corporate business in that manner. Simply put, there is no evidentiary support whatsoever for any allegations of fraud, mismanagement, or waste of corporate assets. Without such evidence, the Court may not appoint a receiver or grant any other type of interim injunctive relief.

One additional point is worth addressing. Counsel for Mr. Phillippi had argued that one of the benefits of a receivership would be that the receiver could take custody of the financial records of the company, sort through past transactions, and give an opinion about the propriety of past conduct. In the Court's view, that is not the function of a receiver. As the cases cited above point out, appointment of a receiver is an equitable remedy

that is designed to prevent future harm, and is not intended simply to assist a party in putting together his or her case for redress based upon events which have already occurred. That is a task for the parties to pursue through discovery and through their own experts, such as forensic accountants, if necessary. Even if the Court might consider some type of equitable intervention in order to assist a party in that task, it is not needed here. Mr. Phillippi has been given access to almost every document he has asked for in discovery (there is only one document, an engagement letter, which is currently the subject of a dispute between the parties) and he can take depositions of all of the persons who have been involved in operating the businesses since January of 2007. Therefore, there is no need for any additional equitable remedy to assist him in discovering and analyzing past transactions.

### III.

Based on the foregoing, it is recommended that the motion for appointment of a receiver (#43 in Case No. 2:07-cv-1001) be denied. The motion to expedite a hearing on that motion (#59 in 2:07-cv-1001 and #64 in Case No. 2:07-cv-916) is denied as moot.

### PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with

instructions.  28 U.S.C. Section 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir.1981).

<u>/s/ Terence P. Kemp</u><br>
United States Magistrate Judge